UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sonya Leclair

    v.                                      Civil No. 18-cv-669-JD
                                          Opinion No. 2018 DNH 241

Donovan Spring Co., Inc.

O R D E R

Sonya Leclair brought suit against her former employer, Donovan Spring Co., alleging state and federal claims of sexual harassment and retaliation. Donovan Spring moves to dismiss the claims as untimely and on the ground that Leclair fails to allege retaliation. Leclair objects.

## Standard of Review

A motion to dismiss for failure to state a claim, under Federal Rule of Civil Procedure 12(b)(6), challenges the sufficiency of the plaintiff's allegations to support of her claims. A plaintiff will survive a motion to dismiss if her factual allegations are sufficient to "state a claim to relief that is plausible on its fact." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In considering the motion, the court accepts the plaintiff's factual allegations as true and draws all reasonable inferences in her favor. Lemelson v. Bloomberg L.P., 903 F.3d 19, 23 (1st Cir. 2018).

Background

Leclair alleges that she was hired by Donovan Spring in 2007 to run the parts counter. Her supervisor was Frank Mangan. Soon after she started the job, an employee, named Ken Goodwin, grabbed her breast. Leclair complained to Rod Hudoba, the manager, and gave a written statement about the incident. Goodwin was given a "write-up," but no other action was taken.

Another employee, Jack Gilles, repeatedly called Leclair a "whore". Leclair complained about Gilles to Mangan and said that she would press charges if the harassment did not stop. Gilles then complained about Leclair because she had reprimanded Gilles's son who was supervised by Leclair. Donovan Spring's vice president, John Chakmakas, met with Leclair, Gilles, and Gilles's son about their complaints. He told them that if Leclair filed a sexual harassment complaint she would be fired and if Gilles complained to the Labor Board he would be fired. Chakmakas's threat of firing kept Leclair from making any further complaint about Gilles.

Bruce Goodwin, who apparently is not related to Ken Goodwin, was the first floor supervisor. Leclair alleges that he made sexually harassing comments to her. As an example, Leclair alleges that he asked her to go to his camp with him when his wife was away and made remarks about his sexual

prowess.  In late October of 2014, Goodwin came up behind Leclair in the warehouse and grabbed her bra strap through her shirt, twisting it until it came undone.  Leclair was upset and crying and immediately complained to Mangan.  An hour later, Goodwin approached Leclair and tapped her buttocks.

Chakmakas stopped Leclair in the hallway and asked about the bra strap incident.  Their conversation was not conducted privately.  Other people walked by, and Hudoba joined the conversation in the hallway.  Chakmakas said that he would investigate, which he predicted could take months.

Thereafter, Leclair was excluded from meetings about work matters.  Donovan Spring took no action to protect Leclair, and she was required to have contact with Goodwin multiple times during each work day.  Leclair left her job with Donovan Spring on January 9, 2015, because she was afraid of Goodwin and Donovan Spring had done nothing to protect her.  When she called Chakmakas on April 15 to ask about the investigation, he said she would receive a letter.  She then received a letter that said Donovan Spring had not found sufficient evidence to support her complaints and that no action would be taken.

Leclair filed a complaint with the New Hampshire Human Rights Commission ("Commission") and the EEOC on April 16, 2015.  The Commission issued its investigative report on June 23, 2017,

in which it found probable cause to support her charges of sexual harassment and retaliation. She received a right to sue letter on May 7, 2018.

As provided under RSA chapter 354-A, Donovan Spring removed the case from the Commission to Rockingham County Superior Court. Leclair filed an amended complaint in state court, alleging violations of RSA chapter 354-A, and filed this action in federal court, alleging violations of Title VII, 42 U.S.C. § 2000e-2(a)(1) and § 2000e-3(a), along with the same claims under RSA chapter 354-A. As a result, two parallel cases are being litigated on the state law claims, one in state court and one in federal court.

When this court realized that the parties were litigating a parallel case on the same state claims in state court, it declined to exercise supplemental jurisdiction over the state law claims in this case. The claims under RSA chapter 354-A, Counts III and IV, therefore, have been dismissed for lack of jurisdiction. The remaining claims in this case are the claims under Title VII for discrimination due to harassment and retaliation, Counts I and II. The part of Donovan Spring's motion to dismiss that challenges the state law claims as untimely is now moot.

Discussion

Donovan Spring moves to dismiss part of Leclair's Title VII hostile work environment claim, Count I, as untimely. In support, Donovan Spring contends that to the extent the claim is based on incidents the occurred before June 20, 2014, the claim is time-barred under § 2000e-5(e)(1).[1] Donovan Spring moves to dismiss Leclair's retaliation claim, Count II, for failure to state a claim. Leclair contends that Donovan Spring has not raised grounds to dismiss Count I and that she has alleged retaliation in Count II.

A.  Hostile Work Environment Claim

Title VII protects employees from discrimination based on gender, including work in a sexually hostile environment. Franchina v. City of Providence, 881 F.3d 32, 45 (1st Cir. 2018). Under § 2000e-5(e)(1), an administrative charge of discrimination must be filed with the state agency within 300 days "after the alleged unlawful employment practice occurred." Because a hostile work environment claim generally is based on a

---

[1] Count I is titled "Discrimination/Harassment." Leclair alleges that she was subjected to severe and pervasive sexual harassment, that the harassment changed the terms and conditions of her employment, and that the harassment caused her constructive discharge. As such, Leclair's allegations suggest a hostile work environment claim, and the court assumes that is the claim she intends to bring in Count I. See, e.g., Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006).

series of incidents or actions over time, the "continuing violation doctrine" provides an exception to the 300-day limit for those claims. Franchina, 881 F.3d at 47.

"The continuing violation doctrine . . . allows plaintiffs to proceed on a hostile work environment claim 'so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.'" Id. (emphasis removed) (quoting Nat'l RR. Corp. v. Morgan, 536 U.S. 101, 122 (2002)). Thus, the claim is timely and the employer is liable if the employee files within 300 days "of any act that is part of the hostile work environment." Morgan, 536 U.S. at 118. "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are separate adverse employment decisions that are immediately actionable and are not subject to the continuing violation doctrine. Id. at 114.

Donovan Spring moves to dismiss Count I to the extent it relies on the incidents before June 20, 2014, on the ground that its liability for those actions is time-barred. Donovan Spring acknowledges that the incidents in October of 2014 when Bruce Goodwin grabbed Leclair's bra strap and twisted it until it came undone and then tapped her buttocks occurred within the 300-day limit. Donovan Spring argues, however, that the earlier

incidents are unrelated to the October of 2014 incidents because the earlier incidents involved different perpetrators and are separated in time from the October incidents.

Donovan Spring did not support its theory by citation to any authority.[2] Acts of harassment are related, for purposes of the continuing violation doctrine, if each individual act is part of the whole hostile work environment. Morgan, 536 U.S. at 118. Even incidents that are separated by time gaps and committed by different perpetrators may be part of the same continuing hostile work environment claim. See Torres v. N.Y. Methodist Hosp., 2016 WL 3561705, at *9 (E.D.N.Y. Jan. 7, 2016) (finding harassment by different individuals in the same department, although separated by time gaps, were related while much earlier incidents that occurred in a different department with different people were not related); Laughlin v. Holder, 923 F. Supp. 2d 204, 218-19 (D.D.C. 2013). On the other hand, the relationship among the acts may be broken if, for example, "certain intervening action by the employer" made the later acts "no longer part of the same hostile environment claim." Morgan, 536 U.S. at 118.

---

[2] Donovan Spring does not contend that the prior incidents or the October incidents are "discrete acts" that, standing alone, triggered the limitation period. See Ayala v. Shinseki, 780 F.3d 52, 58 (1st Cir. 2015).

7

In this case, Leclair alleges harassment over a seven-year period without providing specific dates for the earlier acts and incidents.[3] While the harassment occurred, Donovan Spring had at least some of the same supervisors, who were notified of many of the incidents. As alleged, no remedy or protection was provided. The incidents were similar in that they involved sexually harassing and abusive actions by male employees and sexually suggestive and abusive comments to Leclair by male employees.

---

[3] Leclair, who is represented by counsel, alludes to the continuing violation doctrine but makes no effort to show that the harassment she experienced was part of a continuing pattern. Instead, she states: "Paradigmatically, this is a question of fact to be determined following discovery, and is not susceptible to a Motion to Dimiss [sic]. . . . To what extent this was a part of a pattern against her as contrasted to entirely separate acts is a subject for discover [sic]." Doc. 9-1, at 3 and 4.

While a continuing violation theory may be developed through discovery, the question presented here is whether Leclair alleged sufficient facts to allow a reasonable inference of a continuing violation. Leclair presumably knows what happened, can allege those facts, and argue the reasonable inferences to be drawn from those facts. Counsel's invocation of the need for discovery appears to misunderstand the purpose of a motion to dismiss in this context. See Richardson v. City of Providence, 2018 WL 5619719, at *4 (D.R.I. Oct. 30, 2018) (citing Iqbal, 556 U.S. at 678-79). "[C]ourts, like the Deity, are most frequently moved to help those who help themselves." Magee v. BEA Const. Corp., 797 F.3d 88, 90 (1st Cir. 2015) (internal quotation marks omitted). Nevertheless, the facts Leclair does allege, along with the reasonable inferences that may be drawn, are sufficient to survive the motion to dismiss.

Therefore, as alleged, the earlier incidents and actions are sufficiently related to the October of 2014 incidents to support a continuing violation exception to the 300-day deadline in the context of opposing a motion to dismiss. In addition, even if Leclair ultimately cannot show a continuing violation, she can use "the prior acts as background evidence in support of a timely claim." Morgan, 536 U.S. at 113.

B. Retaliation Claim

Leclair alleges that Donovan Spring retaliated against her, after her complaints about sexual harassment, by threatening to terminate her employment, forcing her to work with Goodwin, and excluding her from meetings that were pertinent to her job duties. Donovan Spring moves to dismiss Leclair's retaliation claim on the ground that she has not alleged facts to show that Donovan Spring retaliated against her by imposing sufficiently adverse actions or a retaliatory hostile work environment. Leclair objects and contends that her allegations of retaliation are sufficient.

Under Title VII, it is unlawful for employers to retaliate against employees who complain about discriminatory employment practices. Noviello v. City of Boston, 398 F.3d 76, 89 (1st Cir. 2005). The elements of a retaliation claim are (1) the plaintiff engaged in protected conduct, such as making a

complaint about the employer's discriminatory practice; (2) the employer imposed an adverse employment action, and (3) her complaint and the adverse action were causally linked. Bonilla-Ramirez v. MVM, Inc., 904 F.3d 88, 95 (1st Cir. 2018). Adverse employment actions, for purposes of Title VII retaliation, are all employer actions "that would have been materially adverse to a reasonable employee," meaning that the actions "could well dissuade a reasonable worker from making or supporting a charge of discrimination." Rivera-Rivera v. Medina & Medina, Inc., 898 F.3d 77, 95 (1st Cir. 2018). Retaliatory workplace harassment may constitute an adverse employment action. Noviello, 398 F.3d at 89.

Leclair alleges that after she complained to Mangan that Gilles repeatedly called her a whore and said that she would press sexual harassment charges if it did not stop, Chakmakas told her that she would be fired if she filed a complaint against Gilles. She alleges that she was intimidated from making further complaints because she was afraid she would be fired. An employer's threat that an employee will be terminated if she reports or complains about discriminatory treatment, particularly if repeated or in combination with other retaliatory actions, may cause a retaliatory hostile work

environment.  See id. at 95-96; Plandeball v. Wyndham Vacation Resorts, Inc., 793 F.3d 169, 178 (1st Cir. 2015).

     Leclair also alleges that despite her report to Mangan, Chakmakas, and Hudoba about Bruce Goodwin's harassment, they did nothing to stop him.  They also made her work in proximity to Goodwin and did not protect her.  An employer's toleration of harassment by other employees may cause a material change in working conditions that constitutes an adverse employment action.  Hernandez-Torres v. Intercontinental Trading, Inc., 158 F.3d 43, 47 (1st Cir. 1998).  Retaliatory harassment "as a punishment for undertaking protected activity is a paradigmatic example of adverse treatment spurred by retaliatory motives and, as such, is likely to deter the complaining party (or others) from engaging in protected activity."  Noviello, 398 F.3d at 90.

     In addition, Leclair alleges that the supervisors excluded her from work-related meetings.  Depending on the nature of the meetings and their importance to her work, that exclusion may be an adverse action or contribute to a retaliatory hostile work environment.  See Burlington Northern & Santa Fe Railway Co v. White, 548 U.S. 68, 69 (2006); O'Rourke v. City of Providence, 235 F.3d 713, 724 (1st Cir. 2001).  Therefore, for purposes of a motion to dismiss, an inference may be drawn that the meetings were sufficiently work-related to support her claim.

As such, Leclair has alleged actions that support her retaliation claim.

## Conclusion

For the foregoing reasons, the defendant's motion to dismiss (document no. 6) is denied.

Leclair filed a motion for leave to file a reply to Donovan Spring's response to her memorandum addressing the issue of abstention. Because the court has declined supplemental jurisdiction over the claims brought under RSA chapter 354-A, the issue of abstention is moot. The motion for leave to file a reply (document no. 14) is denied.

SO ORDERED.

/s/ Joseph A. DiClerico, Jr.
Joseph A. DiClerico, Jr.
United States District Judge

December 11, 2018

cc: Iryna N. Dore, Esq.
    Michael J. Iacopino, Esq.
    H. Jonathan Meyer, Esq.